## Mary C. Stubbs, Defendant in Error, v. Modern Brotherhood of America, Plaintiff in Error.

### Gen. No. 18,779.

1. INSURANCE, § 785*—*when failure to remit monthly assessment and dues in the month they are due does not operate as a suspension.* In an action on a benefit certificate to recover insurance on the death of a member, a defense that the member had been suspended by the automatic operation of by-laws for failure to pay a benefit assessment, per capita tax and reserve fund dues at the end of a certain month for which they were payable, *held* not available to defendant, where it appeared that the notice of such assessment and dues as provided by the by-laws was incorrectly addressed to the member, and that a sufficient sum to cover such assessment and dues was mailed to the Secretary of the Supreme lodge in time, but owing to the omission of the name of the State in the address, the letter was sent to the Dead Letter Office and on its return to the member it was remailed so that the Secretary received it before the 15th of the month following the month for which the assessment and dues were to be paid.

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

2. INSURANCE, § 808*—*when application of member for reinstatement not an admission of validity of suspension.* The fact that a member of a benefit society applies for reinstatement by a waiver of the by-laws of the Order, *held* not to constitute an admission of the existence and validity of a suspension.

3. INSURANCE, § 808*—*when refusal of benefit society to accept dues for prior months excuses a subsequent tender.* Definite refusal of a benefit society to accept a tender of monthly assessments and dues that are due, after having given the member notice of his suspension, excuses a tender of those due for subsequent months.

Error to the Municipal Court of Chicago; the Hon. OSCAR M. TORRISON, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed May 25, 1914.

CHURCH, SHEPARD & DAY, for plaintiff in error; WILLIAM T. CHURCH, of counsel.

ARTHUR S. WELCH, for defendant in error; E. F. MASTERSON, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

The defendant in error, Mary C. Stubbs, who was plaintiff below, obtained August 9, 1912, in the Municipal Court of Chicago a judgment for one thousand dollars against the Modern Brotherhood of America, defendant below, on a benefit certificate issued to her husband by the said defendant, which is a fraternal insurance society of Iowa. To reverse this judgment the plaintiff in error has sued out this writ of error. There is no question made but that the plaintiff's husband, John E. Stubbs, was, up to and on April 30, 1910, a member of the Modern Brotherhood in good standing and that he had a benefit certificate therein for a thousand dollars, payable to the plaintiff on his death, nor that he died on August 9, 1910, and that proof of death was properly made. The defense is that he ceased to be a member in good standing of the Modern Brotherhood by the automatic operation of the laws of

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

the Order on May 1, 1910, because during the month of April, 1910 he had not paid a benefit assessment of fifty-five cents which had been levied as of April 1st, and was payable during that month, nor an additional twenty cents for a "per capita tax" and "reserve fund dues," which were also payable during said month. It is for the plaintiff conceded that the contract made by the application to, the benefit certificate of and the by-laws of the defendant society did provide for a suspension in the case of such nonpayment under certain conditions, and was self-executing and automatic in working a suspension under said conditions; but it is maintained that in this case those conditions did not exist. Those conditions were, it is asserted, and that the society had fulfilled its duties and was without default in its part of the contract, and as to the benefit assessment had given notice to the member of its levy and amount, according to the provisions of the by-laws. The defendant, it is insisted, did not give the proper notice of the April benefit assessment. Concerning the "per capita tax" and "reserve fund dues," as to which no notice was required by the by-laws, it is contended that there was money of the member in the hands of the society more than sufficient to meet them during all the month of April, 1910. Consequently, it is urged, nonpayment during April did not suspend Mr. Stubbs. The dues for April, May and June were tendered and refused and the tender of those due in July, if any, was excused by such definite refusal of these prior ones.

It is further maintained, however, that all the assessments and dues for April and five cents more, in all seventy-five cents, were paid in apt time by a method approved by the society, and that no default on the part of Mr. Stubbs, excusable or inexcusable, occurred.

It is not maintained by the society that recovery is barred by any default which occurred since May 1,

1910, nor by any preceding April 1, 1910, and the case turns, therefore, on the facts relating to the April assessment and dues and the provisions of the contract which affected them. It is, however argued by the defendant that because Mr. Stubbs, and his wife in his behalf, after the dues for April had been refused in May, sought "reinstatement" by "a waiver of the laws of the order," the existence and validity of a "suspension" were admitted and the claimed want of notice of the April assessment, if it existed, was waived.

There is, in our opinion, no strength in this position. The evidence shows no waiver, but only a frank and honorable statement of conditions and a request that advantage should not be taken of an unlooked for delay in the delivery of a letter. That the word "reinstate" was used in a letter of Mrs. Stubbs to the secretary signifies nothing.

The facts concerning the April assessment seems to be these: Stubbs was a member originally of Subordinate Lodge No. 1585 of the defendant society, located in the county of Sanilac, Michigan. He later became a member of Subordinate Lodge 1000, which the Supreme Secretary testified is "a lodge located at Mason City, Iowa, and consists of members making their remittance direct to the Supreme Lodge for various reasons." For many months at least Stubbs had paid his monthly dues and assessments by mailing them direct to the Supreme Secretary. By the Supreme Secretary, receipt was directly acknowledged to Stubbs.

Section 125 of the by-laws of the society provides that:

"Every benefit member shall * * * in each calendar month * * * following the levy of a benefit assessment * * * pay the secretary of said" (his or her) "subordinate lodge the amount of said benefit assessment so levied."

Section 140 of the by-laws provides that:

"The secretary of each subordinate lodge shall on or before the 15th of the month following that for which such assessment and payments are made forward the same to the Supreme Secretary."

No explanation appears in the record concerning the departure from the by-laws in the case of members of Lodge No. 1000.

Section 80 of the by-laws provides that:

"The Board of Directors shall have the power and it shall be its duty to provide for the publication of an official paper for the society which shall be known as 'Modern Brotherhood', a copy of which paper shall be mailed monthly to each member of the society to his or her last known post office address, as shown on the books or records of the Supreme Secretary. Said paper shall contain the official notice of assessments. * * * "

Sections 136, 137 and 138 provide that:

"136. The Supreme Secretary immediately after the levy thereof shall prepare or cause to be prepared a notice of each benefit assessment levied by the Board of Directors, which assessment shall be payable in the next succeeding month and shall publish or cause to be published said notice in the issue of the 'Modern Brotherhood', the official paper of the society next following the levy of such assessment, and a copy of said official paper containing said notice shall be mailed to each benefit member of the society on or before the 28th day of the month in which said assessment is levied.

137. The mailing of a copy of said official paper containing notice of any assessment to each benefit member on or before the 28th day of the month in which said assessment is levied, addressed to such member at his or her last known post office, as shown on the books of the Supreme Secretary, shall be held to be sufficient service of such notice. * * *

138. It is hereby made the duty of each member of the society to furnish the Supreme Secretary with his post office address and of any change therein."

Section 139 provides that:

"Each and every benefit member so notified through

the official paper that an assessment has been ordered or levied by the Board of Directors, in manner and form hereinbefore provided, failing to pay the same together with his per capita tax and reserve fund payments mentioned in Section 124 hereof, including local lodge dues, if any are due, on or before the last day of the month in which said notice is dated and assessment is payable  *  *  *  shall stand suspended, and during such suspension his benefit certificate shall be absolutely null and void.''

Mr. Stubbs lived at 2514 West Jackson boulevard, Chicago, before September 1, 1909; from September 1, 1909, to February 1, 1909, he lived at 2422 West Van Buren street, Chicago, and from February 1, 1910, to August 8, 1910, he lived at 2533 Washington boulevard, Chicago.

September 30, 1909, he wrote the society a letter, inclosing a remittance, signed ''J. E. Stubbs, 2422 Van Buren St., Chicago.'' This letter was received by the society, as were others written by Mrs. Stubbs, who was acting for her husband, and inclosing or referring to monthly remittances, dated respectively Oct. 30, 1909, Nov. 30. 1909, January 1, 1910, January 30, 1910, and February 27, 1910, all of which were signed by Mrs. Stubbs with the addition of the address ''2422 Van Buren Street, Chicago.''

March 29, 1910, Mrs. Stubbs wrote as follows to the Supreme Secretary:

''Chicago, March 29.

E. L. Balz:

Inclosed find 75¢ in stamps for Mr. Stubbs assessment, and oblige,

Mrs. Stubbs.

Address to 2533
    Washington Blvd.,
        2nd flat City.''

February 7, 1910, Balz, the Supreme Secretary, wrote Mr. Stubbs in answer to the letter of Mrs. Stubbs of January 30, 1910, and addressed him at ''2422 Van Buren St., Chicago, Ill.'' So also on

March 4, 1910, he addressed him in another letter as at that place. April 4, 1910 he wrote Mrs. Stubbs acknowledging her remittance for Mr. Stubbs made on March 29th and addressed her at "2533 Washington Boulevard, Chicago," and on May 28th, after the difference had arisen between the defendant society and the plaintiff, again addressed her at the same place.

But the notice of the benefit assessment payable in April and contained in the official paper known as "Modern Brotherhood" was sent on or before March 28, 1910, to the following address: "Stubbs John E., 2514 Jackson, Chicago, Ill.," and according to the positive testimony of Mrs. Stubbs never reached either Mr. Stubbs or her.

Nevertheless, without receiving the notice required by the by-laws, knowing of the usual monthly assessments and dues, she wrote the Supreme Secretary on April 28, 1910, as follows:

"Chicago, Apr. 28, '10.

Mr. E. L. Balz:

Dear Sir: Inclosed you will find seventy-five cents in stamps (75¢) to pay Mr. Stubbs assessment and oblige,

Mrs. Stubbs,
2533 Wash. Blvd."

She inclosed the stamps mentioned, but in addressing the letter left off the name of the State (Iowa), so that it was addressed only to "Mason City." The letter was mailed on the day of its date, but went to the Dead Letter Office in Washington, D. C. and was returned from there to Mrs. Stubbs on May 10th. As soon as it was received she remailed it and the inclosure with an explanation to the complete address of the Supreme Secretary, who received it on May 14, 1910, but declined to accept it and returned it to Mrs. Stubbs with notice that her husband had been suspended.

We think that the payment of the seventy-five cents, which it is conceded was sufficient to cover all the dues to the society, was made in due time and that

no default justifying or effecting suspension can be charged to Mr. Stubbs by reason of the delay which prevented the society from getting the remittance until May 14th. The Secretary testifies that the dues of members of Lodge 1000 were paid by "remittances direct to the Grand Lodge for various reasons," and although the by-laws did not provide for it, it was apparent that this was the method accepted if not required by the society. It was just as much a part of the by-laws that the dues and assessments should be paid to the secretary of the subordinate lodge as it was that they should be paid on or before the last day of the month under penalty of suspension. The payment to the subordinate secretary, required by the by-laws, was waived and direct remittance expected. It reasonably follows, it would seem, that a remittance made by the member by mail direct to the Supreme Secretary, which remittance reached him before the date (the 15th of the month succeeding the assessment) at which the by-laws provided he was to receive it from the subordinate lodge secretary had the by-laws been followed, was in time to prevent an automatic suspension of the member. But even if this were not so, we think that as it was established that the remittance by mail to the Supreme Secretary was accepted as the proper method of payment, the payment took place when the money was deposited in the mail. The defendant does not, as we understand its position, contend that the payment would not have been sufficient and would not have dated from its mailing on April 28, 1910, had the letter been so completely addressed that it would not have been delayed in the mails, or sent to the Dead Letter Office. But it is to be noted that the address was not incorrect nor mistaken, but simply not so complete as it should have been in that the name of the State was omitted. We do not know how many "Mason Citys" there are in the post office directory, but prob-

ably not nearly as many as there are "Bostons" or "Chicagos"; and yet the address without the name of the State of a letter to an extensive business corporation doing business in Boston, Massachusetts, or in Chicago, Illinois, would probably not prevent its speedy dispatch to its proper destination. We are unwilling to say that the regulations or the discretionary action of the United States postal service, which sent the letter in question to the Dead Letter Office and then returned it to the writer for a better direction, instead of sending it in the first instance to Mason City, Iowa, were absolutely necessary; or that it was not so addressed as to make it reasonable to have taken this other course. Under the circumstances, we think the letter may be properly considered to have been *in transitu* from April 28th and not merely from the time it was remailed from Chicago in May.

But again, if this position be not sound, we think it very plain that the notice required by the by-laws of the April benefit assessment was not given. The by-laws prescribed the method of notice and directed that it be mailed to each member of the society at his "last known post office address as shown on the books or records of the Supreme Secretary."

This cannot be construed to mean that if an incorrect address is shown on the mailing list of the Secretary, known by the Secretary to be incorrect, a notice will be sufficient sent to that incorrect address. Such a construction is absurd and nullifies the object of the by-law. In the present case, the address to which the notice was sent was simply 2514 Jackson, Chicago, Ill., neither "boulevard", "avenue", "street", "place", "terrace", "park" or "flats" being added, although localities with these names respectively prefixed by "Jackson" exist in Chicago. The address was at least as defective as "Mason City" without the name of the State. Moreover, the evidence abundantly shows that the Secretary knew that Stubbs no longer lived on

Jackson Boulevard, but had months before moved from there. In the absence of a proper notice, as provided in the by-laws, no default in the payment of the benefit assessment can be held to have worked an automatic suspension of the member. It is argued by the defendant that the "per capita tax" and "reserve fund payment," amounting to twenty cents together, were payable in April without notice, and that as they were not then paid, the suspension automatically took place, whatever may be held of the want of notice of the benefit assessment. But we think this twenty cents and five cents more must be held to have been in the Secretary's hands and applicable to these dues to prevent a forfeiture during the month of April. It is maintained that this money had been applied to "local lodge dues for April, May and June," but in the absence of any sufficient proof that any such payment was overdue, or that any acquiescence was signified on the part of Mr. Stubbs or of the beneficiary to the application of the twenty-five cents surplus by the Secretary, mentioned in the latter's letter of April 4th, we must hold that that balance should have been applied to prevent a forfeiture.

For the reasons we have given which separately as well as together justify the judgment rendered by the court to which the case was submitted without a jury, we shall affirm it. This renders unnecessary any discussion of the propositions of law refused or modified by the court.

*Affirmed.*